[Civ. No. 5850. Third Appellate District.—October 11, 1937.]

MANUEL AGUIAR, Appellant, v. A. SOUDERS, Respondent.

Ray Manwell and Ivan C. Sperbeck for Appellant.

Rich, Weis & Carlin, Richard H. Fuidge and F. E. Carlin, City Attorney, for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against him in a suit to replevin 73 dairy cows from the possession of the poundmaster of Marysville. The court found that the cattle had been seized by the poundmaster and were subsequently taken by plaintiff from the lawful possession of that officer without payment of the impounding fees amounting to the sum of $149, which were then due, and that defendant was therefore entitled to the possession of the cattle, together with a lien thereon for the payment of said sum.

The plaintiff owns the 73 dairy cows which are involved in this suit. June 13, 1936, they were found grazing upon public land belonging to and within the limits of the city of Marysville, contrary to the provisions of an adopted ordinance of that city, numbered 246. Pursuant to the provisions of that ordinance, the defendant, who is the duly qualified poundmaster of Marysville, took possession of the cattle on June 13, 1936, and impounded them in a corral which is a part of the Marysville public pound. Verbal and written notices of the impounding of the cattle were immediately served upon the owner, pursuant to the provisions of the ordinance. The plaintiff was told that he could reclaim the stock upon payment of the impounding fees, which amounted to the sum of $149. On June 15th, a written notice was served upon the plaintiff that unless the cows were reclaimed by him on or before 10 o'clock A. M. of June 23, 1936, they would then be sold at the pound by the city at public auction. The cattle were not reclaimed, nor did the plaintiff offer to pay the impounding fees which were due.

June 15, 1936, this claim and delivery suit was commenced. The complaint alleges that plaintiff is the owner and entitled to possession of the cattle; that they were unlawfully seized by the defendant on June 13th and ever since have been wrongfully held by him to plaintiff's damage in the sum of $500. Upon filing the complaint under statutory proceedings, which we may assume were regular, the sheriff took the cattle from the possession of the poundmaster without tendering to him the impounding fees which were due thereon. The cattle were then placed in charge of a keeper, who delivered them to the plaintiff subject to his official custody. The answer sets up the adoption of public pound ordinance number 246 of the city of Marysville, and avers that the defendant, acting as the duly qualified poundmaster of that city, found on June 13, 1936, plaintiff's 73 head of dairy cattle ranging and grazing on city property within the limits of Marysville, and took possession of the stock and impounded them in a corral which is a part of the public pound, promptly notifying the owner thereof, pursuant to the provisions of the ordinance, that, unless he reclaimed the cattle on or about 10 o'clock A. M. of June 23, 1936, they would be sold at public auction, but that the cattle were never reclaimed by the plaintiff, nor were the impounding fees paid; that the defendant as poundmaster of the city of Marysville is lawfully entitled to possession of the cattle pursuant to the provisions of the city pound ordinance; and that the plaintiff was not damaged in the sum of $500 or at all on account of the impounding or detention of the cattle.

Upon trial the court found the material allegations of the answer to be true; that the plaintiff is the owner of the 73 head of dairy cows; that pound ordinance number 246 was duly adopted by the city of Marysville; that the defendant is the qualified poundmaster of that city; that on June 13, 1936, the defendant found said cattle running at large upon the streets and public lands belonging to and within the limits of the city of Marysville, and that, pursuant to the ordinance, as such poundmaster he did then take the cattle into custody and impound them in a corral belonging to the city public pound, where they were "provided with sufficient food and water"; that he forthwith served the owner with written notice of the impounding of the animals and of the time and place where they would be sold at public

auction if they were not previously reclaimed; that the cattle were not reclaimed by the owner nor were the impounding fees paid by him; "that it is not true that plaintiff suffered damages in the sum of Five Hundred ($500) Dollars or in any other sum, or at all, by reason of the taking of said livestock by the defendant"; that on June 15th the sheriff of Yuba County, pursuant to process which was issued in this claim and delivery case, took possession of the stock from the poundmaster and delivered them to the plaintiff; that the plaintiff owes the sum of $149 as impounding fees on said stock; and that the defendant as poundmaster is therefore entitled to possession of the cattle together with a lien thereon to secure the payment of said fees. Judgment was entered accordingly. From that judgment the plaintiff has appealed.

The appellant practically concedes that his cattle were grazing on the property of the city of Marysville within its boundaries and that they were lawfully taken by the poundmaster and impounded pursuant to the provisions of ordinance number 246. But it is asserted the cattle were thereafter "wrongfully *detained* by the defendant" contrary to section 510, subdivision 2, of the Code of Civil Procedure, by failing and neglecting to properly feed, water or care for the stock, and by placing them in too small an enclosure to their great damage. It is also contended this wrongful detaining of the stock without proper care was contrary to the provisions of article VII, section 6, of the ordinances of Marysville, and that the taking and impounding of the cattle were therefore unlawful and void *ab initio,* entitling plaintiff to the absolute right of possession thereof. The section of the ordinance last mentioned upon which the plaintiff relies reads as follows:

"The poundkeeper shall cause all animals impounded to be provided with sufficient food and water suitable for such animals. Said food and water suitable for such animals shall be supplied at the expense of the City of Marysville. Should the poundkeeper neglect to so feed and water the animal impounded, he shall be liable to the owner for all damages arising therefrom."

It is true, as the text in 2 American Jurisprudence, page 801, section 149, declares, that laws authorizing the summary seizure and sale of estray animals, and all essential

126

provisions thereof must be strictly construed, and that a substantial violation or omission of any essential part thereof will render the entire transaction void *ab initio,* and may make one who wrongfully takes or holds such animals contrary to law liable for any damages which may be incurred on that account. But the court found in that regard:

"That it is not true that plaintiff suffered damages in the sum of Five Hundred ($500.00) Dollars or in any other sum, or at all, by reason of the taking of said livestock by defendant, but that the damages, *if any,* suffered by plaintiff accrued subsequent to said animals being lawfully driven to the city pound and *if any damage was suffered* the same was due to the detention thereof pursuant to the lawful taking as aforesaid."

It is contended this finding, in effect, determines that, while the cattle were not damaged in taking or impounding them, they were damaged by the manner in which they were detained, to wit, by failing to properly feed and water them, and that the evidence does not support a finding that the stock were not damaged either in taking or in the manner of detaining them.

We do not construe the foregoing finding to hold that the cattle were in fact damaged by the manner in which they were detained, to wit, by negligence in failing to properly feed or water them. In accordance with the well-established rule of reconciling apparently inconsistent findings in favor of supporting the judgment, if possible, we are of the opinion we should construe this finding to mean that the plaintiff's cattle suffered no damage either in taking, impounding or caring for them. The court does not find that they were damaged by the manner in which they were cared for or kept in the corral. The court says *"if any damage was suffered"* it was due to the detention thereof. This is not a finding that damages actually occurred. Moreover, there is substantial evidence that the plaintiff agreed with the defendant to feed and care for his own cattle while they were impounded. If the cattle were neglected in that regard, the plaintiff, under such circumstances, could not charge the damages which resulted therefrom to the defendant, for he assumed the responsibility of properly feeding and caring for the stock himself. The defendant testified in that regard:

"He (Manuel Aguiar) said that he would milk and feed his own cattle; take care of his cattle himself."

Mr. LaFortune corroborated that statement by testifying that the plaintiff said he "would milk and feed them".

■ We are of the opinion the evidence sustains the finding that the cattle were not in fact damaged. It appears the 73 head of cattle were placed in the pound corral which is an enclosure 75 by 100 feet in size; they were kept there only two days; a water-trough consisting of one-half of an oil barrel, cut through lengthwise, was placed within the enclosure, into which water from a water-pipe constantly flowed; this water-trough sometimes overflowed. There is evidence indicating that the cattle did not suffer for lack of water. It also appears that ample hay was fed to them through the boards or pickets about the inclosure. Substantial evidence indicates the cattle did not suffer for lack of hay or water. Under such circumstances it is not probable they would suffer in two days' time from a mere reduction of the quantity of hay and water. It is true that there is evidence that the plaintiff suffered a decrease of fifty or sixty gallons of milk a day for five or six days thereafter, and that two cows from the herd gave premature birth to calves which did not survive. But in support of the judgment it may be reasonably assumed there is insufficient evidence to show that this loss was due to any negligence on the part of the poundmaster or because of the inadequate conditions under which the cattle were impounded.

■ We are of the opinion the failure on the part of a poundmaster to properly feed and water estray stock which he has impounded does not invalidate the entire transaction so as to render his detention and holding of the stock illegal, provided he has otherwise strictly followed the statute in that regard, although such neglect would make him liable for any damages to the stock resulting therefrom. It will be observed that is exactly what article VII, section 6, of the ordinances of Marysville, provides. After stating that the impounded stock must be provided with proper food and water, the ordinance declares: "Should the poundkeeper neglect to so feed and water the animal impounded, *he shall be liable to the owner for all damages arising therefrom.*"

The court specifically found that:

"While said animals were in the possession of said defendant as poundkeeper, *all of said animals were provided with sufficient food and water suitable for such animals.*"

There is substantial evidence to support this finding. It follows that the finding to the effect that the plaintiff's cattle were *not* damaged in taking, impounding or detaining them is adequately supported by the evidence. The findings also support the judgment which determines that the defendant was lawfully in possession and entitled to hold the cattle until they were reclaimed by the owner by paying the impounding fees which were due thereon, or until they were otherwise disposed of pursuant to law.

■ Under the circumstances of this case plaintiff is not entitled to retain possession of the stock for the reason that he failed to tender or pay the impounding fees which are due thereon. Since the cattle were legally impounded pursuant to the provisions of ordinance number 246, and in the lawful possession of the poundmaster, the plaintiff was not authorized, by means of replevin or otherwise, to deprive the officer of possession of the animals without first tendering or paying the impounding fees which were due. In 3 Corpus Juris, page 186, section 645, it is said in that regard:

"To test the legality of an impounding the owner of the animals may bring replevin for them, and is sometimes especially authorized by statute to do so. *Where the impounding is legal, a demand and tender of lawful charges is necessary before replevin will lie.*"

It has been held the owner of animals may not recover possession of them from a poundmaster who has lawfully impounded them, by means of replevin or otherwise, until he has either tendered or paid the impounding fees which are lawfully due thereon. (*Wilhelm* v. *Scott*, 14 Ind. App. 275 [40 N. E. 537, 42 N. E. 827]; *Ketchum* v. *Johnson*, 181 Ark. 596 [26 S. W. (2d) 902].)

The cases of *Spect* v. *Arnold*, 52 Cal. 455, and *Thompson* v. *Corpstein*, 52 Cal. 653, relied upon by the appellant, are not in conflict with what we have previously said regarding the necessity of tendering or paying lawful impounding fees as a prerequisite to the owner's right of possession from a poundmaster who has lawfully impounded animals. Both of these cases were reversed on appeal for lack of evidence to show that the animals were *running at large* when they were seized and impounded. In both of these cases the

animals were unlawfully seized and impounded. In the present case the cattle were lawfully seized and impounded because they were found herded and grazing on property belonging to and within the limits of the city of Marysville, contrary to the express provisions of article VII, section 3, of the ordinances of Marysville, as amended by ordinance number 246.

Finally, it is contended the court wrongfully imposed a lien on the cattle for the payment of the impounding fees, since the defendant neither pleaded nor proved the existence of a lien for the payment of his fees. Statutes and ordinances often specifically create liens to secure the payment of poundmasters' fees. (3 C. J. S. 1360, sec. 265.) In the present case no such lien was specifically created by the ordinance. The claim of a lien on the cattle was neither pleaded nor proved. A lien is created either by contract or by operation of law. (Sec. 2881, Civ. Code.) It may be said the law implies a lien upon impounded animals to secure the payment of lawful fees due to the officer. We are of the impression that in the absence of a statute specifically creating the lien, it may not be inferred. It is, however, not necessary to determine this question. This is a mere possessory action to determine the right to the custody of the cattle. The judgment awards the right of possession to the defendant. It was not necessary to vest a lien in favor of the defendant for the payment of the fees. He is entitled to the possession of the stock, and the only way in which they may be reclaimed by the owner is to pay the lawful fees incident to their impoundment.

The judgment is modified by striking out the provision creating a lien upon the cattle. As so modified, the judgment is affirmed. The respondent may recover costs on appeal.

Pullen, P. J., and Plummer, J., concurred.